UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JACOBI QUENTEL FITZGERALD, )<br>  )<br> Plaintiff, )<br>  )<br> v. )<br>  )<br>CREDIT ACCEPTANCE CORPORATION, )<br>LEVY & ASSOCIATES, LLC, )<br>  )<br> Defendants. ) | No. 3:25-cv-00235-RLY-CSW |

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

This matter is before the Court pursuant to an Entry Referring Motion to the Magistrate Judge. In response to the Amended Complaint (Dkt. 8), Defendant Credit Acceptance Corporation ("Credit Acceptance") filed its *Motion to Compel Arbitration* (Dkt. 19) and supporting brief (Dkt. 20). Self-Represented Plaintiff Jacob Quentel Fitzgerald filed his *Opposition to Defendant Credit Acceptance Corporation's Motion to Compel Arbitration* (Dkt. 23). Thereafter, Credit Acceptance filed its *Reply in Support of Motion* (Dkt. 25).

For the following reasons, the Court **GRANTS** Credit Acceptance's *Motion*. (Dkt. 19).

### I. BACKGROUND

This case concerns a dispute between Fitzgerald and Credit Acceptance over Fitzgerald's purchase of a 2014 Toyota Corolla ("the Vehicle") on February 14, 2018, via a retail installment contract ("the Contract"). (Dkt. 20 at 1). As part of the transaction, Fitzgerald executed a Declaration Acknowledging Electronic Signature Process confirming that he had personally affixed his electronic signature to the Contract. (Dkt. 20-3). Importantly, for purposes of the pending *Motion*, Fitzgerald initialed both the Notice of Arbitration and the Arbitration Clause of the Contract

1

thereby acknowledging he "read, [understood], and agree[d] to the terms and conditions of the Arbitration Clause." (Dkt. 20-2). The Arbitration Clause provides:

> Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute. . . . If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. . . . If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute.

(*Id.*)

"We" and "Us" are collectively defined as "Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation)." Additionally, the Arbitration Clause defines the types of "disputes" that the Parties agreed to submit to binding arbitration:

> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

(*Id.*)

Although the Arbitration Clause permitted Fitzgerald to revoke his consent by written rejection within thirty (30) days of the date of the Contract, Fitzgerald failed to do so. (Dkt. 20 at 4-5).

Fitzgerald's Amended Complaint, filed on December 1, 2025, alleges Credit Acceptance failed to comply with an "authentication request" regarding his Contract, reported "inaccurate information" to the credit bureaus, and rejected his "tender" of payment for the balance he owed on the Contract. (Dkt. 8 at 2-4). Based on these allegations, Fitzgerald claims Credit Acceptance violated the Fair Debt Collection Practices Act, the Indiana Uniform Commercial Code (UCC), the Texas

2

Debt Collection Act, and the Fair Credit Reporting Act. (*Id*.). Fitzgerald also brings claims of fraud and breach of contract. (*Id*.).

On February 3, 2026, Credit Acceptance filed its *Motion to Compel Arbitration* (Dkt. 19) and supporting brief (Dkt. 20). Credit Acceptance contends that Fitzgerald's claims are all subject to a binding arbitration clause. Therefore, Credit Acceptance seeks an order compelling arbitration and staying the case. Fitzgerald filed his *Opposition* on February 18, 2026. (Dkt. 23). Credit Acceptance filed its *Reply* on February 20, 2026. (Dkt. 25). Therefore, this matter is ripe for ruling.

## II. LEGAL STANDARD

In 1925, Congress enacted the Federal Arbitration Act ("FAA") in response to "widespread judicial hostility to arbitration." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, arbitration is a matter of contract. *Am. Exp.*, 570 U.S. at 233. Consistent with this principle, courts must place arbitration agreements "on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011).

A party moving to compel arbitration must show (1) a valid agreement to arbitrate, (2) that the dispute is within the scope of arbitration, and (3) that the opposing party refuses to proceed to arbitration. *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023). Arbitration can only be compelled when the court is "satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original); *see also United Nat. Foods, Inc. v. Teamsters Loc. 414*, 58 F.4th 927, 933 (7th Cir. 2023). Whether a valid arbitration agreement exists is a matter of state contract law. *Tinder v.*

3

*Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). Under Indiana law, an arbitration agreement — like any enforceable contract — requires an offer, acceptance, consideration. *Land v. IU Credit Union*, 218 N.E.3d 1282, 1287 (Ind. 2023).

If the movant establishes there is a valid arbitration agreement, the FAA provides a strong presumption that arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 650 (1986) (internal quotations omitted). Any doubt concerning the arbitration "should be resolved in favor of coverage." *Id.*

A motion to compel arbitration is decided according to the standard used to resolve summary judgment motions pursuant to Fed. R. Civ. P. 56. *Tinder*, 305 F.3d at 735. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* (citing *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)).

### III. DISCUSSION

Credit Acceptance argues that this dispute falls squarely within the ambit of the Arbitration Clause. (Dkts. 19, 20 at 3). Credit Acceptance further contends Fitzgerald is bound by the provision of the Arbitration Clause to arbitrate "any controversy or claim" he has with Credit Acceptance related to the Contract or Vehicle. (Dkt. 20 at 5). In response, Fitzgerald concedes that he is bound by the Arbitration Clause, that the Arbitration Clause is valid and enforceable, and that his claims fall within the scope of the disputes he agreed to arbitrate. (Dkt. 23 at 1). Fitzgerald contends, however, that Credit Acceptance has waived its right to arbitration by previously initiating a state-court collection action and filing appearances, a Rule 7.1 disclosure statement, and its *Motion to Compel Arbitration*

in the instant case. (*Id*. at 1-3). On reply, Credit Acceptance argues that none of those actions constitute a waiver of its right to arbitration. (Dkt. 25 at 1-4).

### A. VALIDITY OF THE ARBITRATION AGREEMENT

The Arbitration Clause is a valid agreement to arbitrate. Whether a valid arbitration agreement exists is a matter of state contract law. *Tinder*, 305 F.3d at 733. "An agreement to arbitrate must be in writing and evince an intention to resolve some controversy through arbitration." *Novotny v. Renewal by Andersen Corp.*, 861 N.E.2d 15, 22 (Ind. Ct. App. 2007). As with all contract interpretation, courts give the language of the arbitration agreement "its plain and ordinary meaning." *Green Tree Servicing, LLC v. Brough*, 930 N.E.2d 1238, 1241–42 (Ind. Ct. App. 2010). To "determine the intent of the parties at the time the contract was made," a court should examine "the language used to express their rights and duties." *Id*. When construing an arbitration agreement, "every doubt is to be resolved in favor of arbitration." *Id*.

Credit Acceptance presented a sworn declaration and exhibits demonstrating that both the Notice of Arbitration and the Arbitration Clause were in writing and initialed by Fitzgerald. (Dkt. 20-2). Credit Acceptance has also provided evidence that Fitzgerald executed a Declaration Acknowledging Electronic Signature Process, which confirmed that he had personally affixed his electronic signature to the Contract. (Dkt. 20-3). Additionally, Fitzgerald had the opportunity to reject the Arbitration Clause within thirty (30) days of the date of the Contract and failed to do so. (Dkt. 20-1). Fitzgerald admits both the existence and validity of the Arbitration Clause in his *Response*. (Dkt. 23 at 1).

The Arbitration Clause is written broadly to encompass all disputes and explicitly contains the Parties' agreement to submit all disputes related to the Contract to arbitration; therefore, the Arbitration Clause is valid.

### B. SCOPE OF THE ARBITRATION AGREEMENT

Fitzgerald's claims indeed fall within the scope of the Arbitration Clause. In addition to showing a valid agreement to arbitrate, a party seeking arbitration must

also show that the dispute is within the scope of arbitration. *Kass*, 75 F.4th at 700. This Court has held "[i]f an 'arbitration clause is broad enough, by its own terms, to encompass disputes,' then arbitration of those disputes is required. *Edmondson v. German Am. Bank*, 748 F. Supp. 3d 621, 628 (S.D. Ind. 2024); quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002). Moreover, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration." *Id.* at 629. Credit Acceptance contends that the Arbitration Clause encompasses all of Fitzgerald's claims. (Dkt. 20 at 3). Fitzgerald concedes that his claims are the type of claims that fall within the scope of the agreement to arbitrate. (Dkt. 23 at 1).

Based on a plain reading of the Clause along with the claims Fitzgerald asserts, the Court finds the Arbitration Clause encompasses all claims at bar. Accordingly, Fitzgerald's claims, as pled in his Amended Complaint, are within the scope of the Arbitration Clause and must be arbitrated.

### C. WAIVER

Credit Acceptance has not waived its right to arbitration. There is a "strong federal policy" favoring arbitration. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 590 (7th Cir. 1992). As such, parties asserting waiver of a right to arbitrate "bear a 'heavy burden' and courts should not 'lightly infer' waiver." *Id.* To establish waiver, a party must show that the party seeking arbitration "acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011).

To analyze whether a party has waived its right to arbitrate, several factors are weighed including "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Kawasaki Heavy Indus.*, 660 F. 3d at 994. Additionally, the Court attributes more weight to the "diligence or the lack thereof of the party seeking arbitration," and considers whether the party did "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed

judicially or by arbitration." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).

Fitzgerald contends Credit Acceptance waived its right to arbitration by previously initiating a state-court collection action and filing appearances, a Rule 7.1 disclosure statement, and its *Motion to Compel Arbitration* in the instant case. (Dkt. 23 at 1-3). Credit Acceptance argues that its earlier collection action does not amount to a waiver of its right to arbitrate Fitzgerald's present claims. (Dkt. 25 at 3).

Credit Acceptance's position is supported by the law of this circuit. The Seventh Circuit has previously found that litigating a separate, yet related case, does not result in waiver of a party's right to compel arbitration in another later. *See Kawasaki*, 660 F.3d at 996; *see also Ramirez v. Midland Funding, LLC*, 2019 WL 2568478, at *7 (N.D. Ill. June 21, 2019) ("Defendant did not waive its right to arbitrate the FDCPA claim in this case merely by filing an earlier, separate claim to collect the debt on the account."). Accordingly, Credit Acceptance's earlier state-court collection action does not result in a waiver of its right to arbitrate Fitzgerald's present claims.

Further, Credit Acceptance's filing of appearances, a Rule 7.1 disclosure statement, and its *Motion to Compel Arbitration* similarly do not result in waiver. Credit Acceptance argues that it demanded that Fitzgerald arbitrate his claims from the outset of this case; it has not filed any motions regarding the merits of the claims; and no discovery has occurred. (Dkt. 25 at 3). These circumstances demonstrate that Credit Acceptance appropriately and as soon as practicable pursued arbitration.

Courts have found waiver where a defendant seeking to compel arbitration not only removed the case to federal court but also participated in discovery. *Cabinetree of Wisconsin, Inc.*, 50 F.3d at 391. In *Cabinetree*, the Court found a party waived the right to pursue the matter in arbitration when it filed a lawsuit, litigated for nine months, and propounded discovery requests requiring the other party to produce nearly two-thousand documents before seeking to compel

7

arbitration. *Id.* at 389. The instant case is distinguishable. Credit Acceptance has not filed any motions regarding the merits of the claims and discovery has not begun. Credit Acceptance timely and properly sought arbitration only two months after the screening of Fitzgerald's Amended Complaint. (*See* Dkts. 9, 19.). Fitzgerald has not shown that Credit Acceptance has acted inconsistently with its right to arbitrate, and therefore, Credit Acceptance has not waived its right to seek arbitration.

//
//
//

### IV.   CONCLUSION

For the foregoing reasons, Credit Acceptance's *Motion to Compel Arbitration* (Dkt. 19) is **GRANTED**. If Fitzgerald intends to pursue his claims, he must proceed as set forth in the Arbitration Agreement.

Credit Acceptance has requested a stay of the action pending arbitration. Section 3 of the FAA provides that "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather to dismiss outright.").

**IT IS THERFORE ORDERED** that pending further order of the Court, all proceedings in this action are hereby **STAYED.**

Further, Credit Acceptance is **ORDERED** to file a status report on or before April 1, 2026, indicating whether Plaintiff has initiated arbitration. If arbitration is not pursued by April 1, 2026, the Undersigned will recommend to the district court judge that this action be dismissed with prejudice. If arbitration is pursued, Credit

Acceptance is ordered to file reports on the status of the arbitration, starting every 60 days from the date of the first status report.

**SO ORDERED.**

Date: February 25, 2026

Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

Distributed via CM/ECF to counsel of record and via U.S. mail to:

JACOBI QUENTEL FITZGERALD
2301 West White Ave
Apt 817
McKinney, TX 75071